# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### ABILENE DIVISION

Joyce, Robert Damian, et al.
Plaintiff

v.

180 House, Inc.
Defendant

Civil Action No. **1-20CV-148 H**

*Jury Trial Demanded*

## COMPLAINT

See Attached.

\* Attach additional pages as needed.

Date: July 7, 2020
Signature: Robert Joyce
Print Name: Robert Joyce
Address: 2102 Amy Lyn Avenue
City, State, Zip: Abilene, TX 79603
Telephone: (325)721-7896

## COMPLAINT-CLASS ACTION AND JURY DEMAND

1) This is a class action alleging violations of Title III of the Americans With Disabilities Act of 1990 (ADA), 42 U.S.C. Section 12182et seq.; 28 C.F.R. Section 36.302(a); and 28 C.F.R. Section 36.206et seq.

## JURISDICTION

2) Jurisdiction is invoked pursuant to 28 U.S.C. Section 1331.

## PARTIES

3) Plaintiff: Robert Damian Joyce, 2102 Amy Lyn Avenue, Abilene, TX 79603, Taylor County, Phone # (325)721-7896.

4) Defendant: 180 House, Inc., service of process: Owner: Richard Kennedy, 2102 Amy Lyn Avenue, Abilene, TX 79603, Taylor County.

## CLASS DEFINED

5) All future and present mobility impaired residents of the 180 House, Inc.

## DISABILITY DEFINED

6) Plaintiff Joyce is a mobility impaired person afflicted with:

a) severe spinal injury;

b) leg amputation.

7) Plaintiff Joyce requires:

a) prosthetic leg;

b) soft-sole shoes;

c) wheelchair/walker per prosthetic error;

d) occasionally a cane.

8) Plaintiff Joyce's spine injury causes:

a) extreme and chronic, paralyzing physical pain, agitated by any movement (chronic pain sufferer), that can deny ability to walk.

9) Plaintiff Joyce's leg amputation causes:

a) extreme and chronic, physically painful sores on amputation stump, that can deny ability to walk.

10) Plaintiff Joyce is disabled to the extent that he has difficulty bathing and performing household chores.

11) Plaintiff Joyce is unable to acquire gainful employment due to said spinal injury.

12) Plaintiff Joyce is in need of, and waiting for a second spine surgery.

13) Plaintiff Joyce is disabled as defined by the ADA.

## **TABLE OF CONTENTS**

Caption..................................................................................................................................i

Jurisdiction...........................................................................................................................ii

Parties..................................................................................................................................ii

Class Defined......................................................................................................................ii

Disability Defined...............................................................................................................ii

Class Action Allegations.....................................................................................................1

    Claim One:

    180 House Unreasonable Accommodations..................................................................1

    Claim Two:

    180 and 182 House Retaliation on the Basis of a Disability.........................................8

Causes of Action................................................................................................................10

Request for Relief..............................................................................................................11

Verification........................................................................................................................13

## CLASS ACTION ALLEGATIONS

## CLAIM ONE:

## 180 HOUSE UNREASONABLE ACCOMMODATIONS

14) The 180 House is a halfway house for substance abusers. Said house implements a chore list (house cleaning), that requires each resident to work a fifteen to forty-five-minute chore, one day of the week.

15) After the first week of residency, all residents working less than twenty hours a week are forced to work additional chores (extra house cleaning), Monday through Friday (five days a week), 8:00 a.m. to 10:00 a.m. (two hours a day), totaling ten hours a week of extra chores labeled as "community service" (slave labor).

16) Able-bodied residents deterred by free labor, acquire employment, and the mentally impaired, are exempted via the Intensive Outpatient Program (IOP), leaving only the mobility impaired (spine injuries, broken bones, vital organ failure, etc., i.e., chronic pain sufferers), to work the slave labor.

17) Mobility impaired residents are denied exemption from the slave labor on the basis of physical disability, exempted via excuses of necessity only, e.g., doctors' appointments, reporting to adult supervision, etc.

18) Residents given the status of "Hall President" and "Vice President," working less than twenty hours a week, are exempted from the requirement of slave labor, and given authority to bully the mobility impaired residents into submission, i.e., to work said slave labor.

1

19) Mobility impaired residents with severe standing limitations, are forced to sit in wheelchairs and wheel themselves around to clean doorknobs, and if unable to clean door knobs, to just sit in the wheelchair for the time allotted to work the slave labor, while the other mobility impaired residents capable of ambulating while working the slave labor, work said slave labor (sweeping, mopping, cleaning kitchens, etc.), while ambulating.

20) Those with severe spine injuries, and other serious medical conditions causing extreme and chronic physical pain (twenty-four hours a day, seven days a week, three hundred and sixty-five and a half days a year), suffer extreme physical pain agitating pre-existing injuries (elevated pain), wheeling themselves around in wheelchairs, simply just sitting in a wheelchair, already in extreme physical pain lying in bed before sitting in a wheelchair, most choosing to ambulate while working the slave labor.

21) IOP is four days of the five-day work week, and on their day off, the mentally impaired are instructed by Hall Presidents/Vice Presidents, to bully the mobility impaired into submission, i.e., out of their beds to work the slave labor. The mentally impaired, after being exempted from said slave labor, are also allowed to work other residents' listed chores at five dollars an hour, for which they advertise via flyers in public areas.

22) At least one mentally impaired resident (and possibly mobility impaired, an African American woman), who stopped attending IOP, called an ambulance to take said resident to the hospital to escape subjection to the slave labor. Said resident resumed attending IOP to escape said slave labor.

23) Able-bodied residents exempted from the slave labor via working more than twenty hours a week, pay other residents to work said able-bodies' chores on the weekly chore list, thus

2

escaping all house cleaning, while mobility impaired residents unable to pay other residents to work said mobility impairers' chores on the weekly chore list, are also not allowed to pay other residents to work the mobility impairers' slave labor, even if they could afford to pay another resident to work said slave labor.

24) The 180 House also requires residents to attend Alcoholics Anonymous/Narcotics Anonymous (AA/NA), meetings. Residents working more than twenty hours a week, are only required to go to four meetings a week, while the mobility impaired, unable to work, are required to attend two meetings a day, Monday through Saturday, and one on Sunday, totaling thirteen meetings a week, nine more than the four required of the able-bodied. Mobility impaired residents who miss one of the thirteen AA/NA meetings a week, are required to work one hour of slave labor for each meeting missed.

25) Residents present at noon at the 180 House, must attend an AA/NA meeting at noon, which is only the mobility impaired and new able-bodied residents not yet working. Those present at noon who miss a noon meeting (mostly the mobility impaired), are required to work one hour extra of slave labor.

26) At noon, the mobility impaired are also driven to the NA meeting place "Living Free," thirty minutes early, five days a week, so they can clean up at Living Free (more slave labor), totaling two and a half hours a week, added to the ten hours of slave labor every morning, totaling twelve and a half hours a week of slave labor in addition to the fifteen to forty-five minute chore, one day of the week, required by all residents, the mobility impaired required to work twelve and a half hours more of chores than the fifteen to forty-five-minute chore required of the able-bodied working more than twenty hours a week.

3

27) Occasionally, mobility impaired residents are required to work more than one fifteen to forty-five-minute chore, more than one day of the week, from the weekly chore list, in addition to the twelve and a half hours of the required slave labor. One would think said residents would be exempt from the weekly chore list, working said slave labor, but they are not.

28) In addition to the slave labor every morning, mobility impaired with spine injuries, and other serious medical conditions causing extreme physical pain, suffer extreme physical pain from sitting on hard plastic chairs at Living Free, their spinal injuries, and other serious medical conditions causing extreme physical pain, already agitated from the slave labor (elevated pain), and further agitated by sitting on hard plastic chairs (more elevated pain), just sitting rather than resting in bed after subjection to the morning slave labor, that agitates their serious medical conditions causing extreme physical pain (elevated pain).

29) The 180 House employs able-bodied residents as groundskeepers working landscaping activities, e.g., mowing the grass, for which said residents are paid for their labor, while inside the 180 House, out of sight of the public eye, mobility impaired residents are bullied into slave labor, i.e., extra house cleaning, for which said residents receive no pay, and evicted into the street if they protest or refuse, said slave labor that causes them extreme physical pain (elevated pain).

30) Residents ordered to work community service by the courts benefit by working off fines via the community service/slave labor, while mobility impaired residents not owing court ordered fines, receive no monetary benefit working said community service/slave labor.

31) The 180 House is neighbored by the 182 House. After a probationary period, residents of the 180 House are allowed to move to the 182 House, where mobility impaired

4

residents are subjected to an identical slave labor scheme as of the 180 House, causing said residents extreme and paralyzing physical pain (elevated pain).

32) At the 180 and 182 House, able-bodied residents get paid for labor outside the scope of the chore list, while mobility impaired residents unable to work gainful employment, are required to do more chores than the able-bodied residents, with the mobility impaired receiving no monetary benefit for labor outside of the chore list.

33) At the 180 and 182 House, mobility impaired residents with little money due to inability to work gainful employment, are forced to clean up after the able-bodied residents with lots of money from working employment. Said mobility impaired residents are forced upon them the role of the step child: "Cinderella."

34) At the 180 and 182 House, mobility impaired residents are also denied use of the washing machines and dryers to wash clothes on the weekends (Saturday and Sunday), on the basis of working less than twenty hours a week. Only able-bodied residents who work more than twenty hours a week are allowed to use said machines on the weekends. Violation of said rule, and/or any other rule, results in one hour of slave labor.

35) Facilitators of 180 and 182 House are jealous of the mobility impaired residents, who are unable to work gainful employment, lying in bed and sleeping away the morning hours in air conditioning, while receiving government checks. Said facilitators possess a special kind of hate for the mobility impaired, inflicting extreme and paralyzing physical pain upon the mobility impaired via the morning slave labor, to punish said residents for being mobility impaired, i.e., monetary burdens on society.

36) Facilitators of the 180 and 182 House, use mobility impaired residents as a tool to manipulate able-bodied residents into acquiring employment, at said mobility impaired residents' expense, i.e., agitation of pre-existing injuries (elevated pain), working the slave labor, causing extreme and paralyzing physical pain.

37) Facilitators of the 180 and 182 House subject the mobility impaired residents to the very thing that impairs their ability to work gainful employment, i.e., impaired ability to perform household chores due to increase in already existing physical pain (elevated pain), forcing said residents to work slave labor solely on the basis of their physical inability to work, agitating their pre-existing injuries causing them extreme and paralyzing physical pain (elevated pain).

38) Facilitators of the 180 and 182 House take away, with the slave labor and excessive AA/NA meetings, hours from the mobility impaired residents they can never get back, reducing the time during the day they are able to ride the city bus for personal purposes.

39) Mobility impaired residents, when forced to work the morning slave labor and attend two AA/NA meetings per day, must lay in bed all afternoon in extreme and paralyzing physical pain (elevated pain), recovering from said slave labor followed by the noon NA meeting at Living Free, so they are rested enough to attend the evening N/A meeting, unable to ride the city bus, with such short time to do so, forced to speak lies about having doctors' appointments to have a day to themselves to ride the city bus for personal purposes, experiencing additional extreme physical pain (elevated pain), while engaging in said personal tasks, due to agitation of their spine injuries, and other serious medical conditions causing extreme and paralyzing physical pain (elevated pain), taking away what diminished quality of life they have left to live, and diminishing said quality of life even further.

40) Accordingly, subjecting mobility impaired residents with spine injuries, broken bones, and other severe medical conditions causing extreme physical pain, i.e., chronic pain sufferers, to said slave labor and excessive AA/NA meetings, agitating their pre-existing injuries causing an increase in already existing extreme physical pain (elevated pain), entices said chronic pain sufferers to self-medicate with the over-the-counter pain reliever ethyl alcohol, and other substances that numb physical pain and cause substance abuse, therefore minimizing their chances of staying abstinent from said substances, and increasing their chance of relapse on alcohol and drugs. Said slave labor is counter-productive to mobility impaired residents' recovery and sobriety while living in a half-way house for recovering substance abusers, causing the unnecessary and wanton infliction of extreme, and paralyzing physical pain.

## CLAIM TWO:

## 180 AND 182 HOUSE RETALIATION ON THE BASIS OF A DISABILITY

41) Mobility impaired residents at the 180 and 182 House who:

a) protest;

b) refuse;

c) provide medical documentation exempting; and/or

d) invoke ADA exemption,

with respect to the additional chores labeled as "community service" (slave labor), as described in Claim One, para. 15-40, pp. 1-7, are evicted without notice at the end of the day, after public transportation ceases, with no means to reach the Salvation Army, or move their property, to sleep in the dirt under the stars without shelter from rain, hail, sleet, snow, freezing wind, and dangerous heat.

42) Amputees who require soap and water on a daily basis to keep their stump clean where it fits into the prosthetic leg, sustain severe sores and extreme odor when deprived of ability to bathe, causing their stump to literally start rotting inside the prosthesis. Sleeping on the hard ground agitates spine injuries, and other serious medical conditions that cause extreme physical pain. Amputees with leg amputations are horrified at the thought of being homeless, minus spine injury, or any other serious medical condition causing extreme physical pain, that would be extra-miserable when homeless.

8

43) To avoid said misery, mobility impaired residents must beg forgiveness, and agree to keep working the slave labor, to avoid being thrown into the street after protesting the slave labor.

44) Mobility impaired residents who file civil actions against the 180 House will surely be evicted, and if not, they will live in fear of illegal substances being planted in their room to make them disappear.

45) Said actions cause mobility impaired residents mental anguish and extreme physical pain, either evicted, or allowed to remain a resident.

## **CAUSES OF ACTION**

46) Defendant 180 House, Inc., actions, as described in:

A) Claim One, para. 15-40, pp. 1-7, constitute failure to reasonably accommodate a disability, in violation of Title III of the Americans With Disabilities Act, 42 U.S.C. Section 12182et seq.; and 28 C.F.R. Section 36.302(a).

B) Claim Two, para. 41-45, pp. 8,9, constitute discrimination on the basis of a disability, failure to reasonably accommodate a disability, and retaliation on the basis of a disability, in violation of Title III of the Americans With Disabilities Act, 42 U.S.C. Section 12182et seq; 28 C.F.R. Section 36.302(a); and 28 C.F.R. Section 36.206et seq.

## **REQUEST FOR RELIEF**

Plaintiffs request:

A) A declaratory judgement stating that Defendant 180 House, Inc., actions, as described in:

1) Claim One, para. 15-40, pp. 1-7, constitute failure to reasonably accommodate a disability, in violation of Title III of the Americans With Disabilities Act, 42 U.S.C. Section 12182et seq.; and 28 C.F.R. Section 36.302(a).

2) Claim Two, para. 41-45, pp. 8,9, constitute discrimination on the basis of a disability, failure to reasonably accommodate a disability, and retaliation on the basis of a disability, in violation of Title III of the Americans With Disabilities Act, 42 U.S.C. Section 12182et seq.; 28 C.F.R. Section 36.302(a); and 28 C.F.R. Section 36.206et seq.

B) An injunction prohibiting Defendant 180 House, Inc., from:

1) forcing mobility impaired residents to work extra chores (slave labor), i.e., more chores than the able-bodied residents working more than twenty hours a week.

2) retaliating against mobility impaired residents, i.e., evicting them into the street, who protest, refuse, or exempt themselves from working extra chores (slave labor), i.e., more chores than the able-bodied residents working more than twenty hours a week.

3) forcing mobility impaired residents to attend more AA/NA meetings (thirteen), than the able-bodied residents working more than twenty hours a week.

4) punishing mobility impaired residents with one hour of extra chores (slave labor), when missing one of the required thirteen AA/NA meetings per week.

5) retaliating against mobility impaired residents, i.e., evicting them into the street, who refuse to attend more AA/NA meetings (thirteen), than the able-bodied residents working more than twenty hours a week, or refuse to work one hour of extra chores (slave labor), for missing one of the required thirteen AA/NA meetings per week.

6) forcing mobility impaired residents to clean up (more slave labor), at the NA meeting place "Living Free."

7) punishing mobility impaired residents with one hour of extra chores (slave labor), when missing a noon meeting at Living Free.

8) retaliating against mobility impaired residents, i.e., evicting them into the street, who refuse to clean up (more slave labor), at Living Free, or refuse to work one hour of extra chores (slave labor), for missing a noon meeting at Living Free.

9) denying mobility impaired residents use of the washing machines and dryers to wash clothes on the weekends (Saturday and Sunday).

10) punishing mobility impaired residents with one hour of extra chores (slave labor), when using the washing machines and dryers on the weekends.

11) retaliating against mobility impaired residents, i.e., evicting them into the street, who use the washing machines and dryers on the weekends, or refuse to work one hour of extra chores (slave labor), for using said machines on the weekends.

12) using slave labor to punish mobility impaired residents, i.e., chronic pain sufferers.

C) Grant any other such entitled relief.

## **VERIFICATION**

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

July 7, 2020
Date

Robert Joyce
Robert Joyce
2102 Amy Lyn Avenue
Abilene, TX 79603
(325)721-7896

13

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Joyce, Robert D., et al.

## DEFENDANTS
180 House, Inc.

**(b)** County of Residence of First Listed Plaintiff: Taylor
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Taylor
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** / ☐ 370 Other Fraud | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☒ 446 Amer. w/Disabilities - Other / **Other:** | **IMMIGRATION** | | |
| | ☐ 448 Education / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | / ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | / ☐ 555 Prison Condition | | | |
| | / ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Section 12182 et seq.
Brief description of cause:
Failure to reasonably accommodate a disability, and retaliation on the basis of a disability.

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ injunction

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE _____ SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____